## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| **v.** | **)** | **CR. NO. 21-70 (ABJ)** |
| **SAMUEL CAMARGO** | **)** | |

## MOTION TO DISMISS COUNT ONE

Samuel Camargo, through undersigned counsel, respectfully moves pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure for the Court to dismiss Count 1 as failing to state a valid offense and violating an array of constitutional protections. The indictment charges a violation of 18 U.S.C. § 231(a)(3), which prohibits a range of conduct deemed to interfere with law enforcement officers performing duties "incident to or during the commission of a civil disorder." This Count should be dismissed for the following reasons: (1) Section 231(a)(3) exceeds the Commerce Clause by addressing purely intrastate exchanges between individuals and local law enforcement; (2) Section 231(a)(3) violates the First Amendment; and (3) Section 231(a) is unconstitutionally vague in violation of the Due Process Clause for using ambiguous terms thereby providing inadequate notice of prohibited conduct.

## BRIEF FACTS & STATUTORY LANGUAGE

The government alleges that on January 6, 2021, Samuel Camargo attended a rally by the White House on the National Mall and then moved with a large crowd to the west side of U.S. Capitol Grounds. At approximately 3:22 p.m., Camargo approached the North Door of the U.S. Capitol building, which was closed to the public. While holding his mobile phone in his right hand to videotape his actions, Camargo pulled open the North Door that led to the North Appointment Desk area of the U.S. Capitol building. Several U.S. Capitol Police were guarding

the interior of the North door and stopped Camargo from crossing the threshold into the U.S.

Capitol building.  The government contends that when Camargo opened the North Door of the

U.S. Capitol building, Camargo knew that he did not have permission to enter the building and

that he did so willfully and knowingly for the purpose of impeding, disrupting and disturbing the

orderly conduct of a session of Congress.

The only felony count Mr. Camargo faces is 18 U.S.C. § 231(a)(3), which states:

> (3) Whoever commits or attempts to commit any act to obstruct, impede, or
> interfere with any fireman or law enforcement officer lawfully engaged in the
> lawful performance of his official duties incident to and during the commission of
> a civil disorder which in any way or degree obstructs, delays, or adversely affects
> commerce or the movement of any article or commodity in commerce or the
> conduct or performance of any federally protected function--

Shall be fined under this title or imprisoned not more than five years, or both.  18 U.S.C. §

231(a)(3).

## ARGUMENT

### I.        Section 231(a)(3) Violates the Commerce Clause.

Under *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529

U.S. 598 (2000), section 231(a)(3) unconstitutionally surpasses Congress's authority and interferes

with the States' key role in general law enforcement because it largely applies to local conduct and

requires only an attenuated connection to interstate commerce.  Congress's power to regulate

commerce is limited by the Tenth Amendment, which reserves police powers for the States.

Hence, Congress's power to regulate commerce was limited to three categories of activity: (1) "the

use of the channels of interstate commerce;" (2) "the instrumentalities of interstate

commerce, or persons or things in interstate commerce;" and (3) "those activities that

substantially affect interstate commerce." *Lopez*, 514 U.S. at 561 n. 3 (internal quotation marks

omitted).

The Supreme Court established the third *Lopez* category in order to define "the outer limits" on Congress's authority to enact legislation "regulating intrastate economic activity" that "substantially affect[s] interstate commerce." *Lopez*, 514 U.S. at 559; *see also United States v. Robertson*, 514 U.S. 669, 671 (1995) ("The 'affecting commerce' test was developed in our jurisprudence to define the extent of Congress' power over purely *intra*state commercial activities that nonetheless have substantial *inter*state effects") (emphasis in original). The regulated activity must "substantially affect" interstate commerce because "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Morrison*, 529 U.S. at 618.

As in *Lopez* and *Morrison*, the act of interfering with the duties of a law enforcement officer incident to a civil disorder is not economic in nature. In *Lopez*, the Court found the activity of gun possession under the Gun-Free School Zones Act has "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez*, 514 U.S. at 567. Further, the Gun-Free School Zones Act was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* Similarly, in *Morrison*, the Supreme Court concluded that the civil remedy for gender- motivated violence under Violence Against Women Act was a regulation of noneconomic activity that exceeded Congress's commerce authority. 529 U.S. at 617. Even though the VAWA was enacted with the support of significant congressional findings regarding the "nationwide, aggregated impact" of gender-motivated violence on interstate commerce, the Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617. The "noneconomic, criminal nature of the conduct at issue was central" to the *Lopez* and *Morrison*

rulings. *Morrison*, 529 U.S. at 610. In short, the language of section 231(a)(3) reaches beyond Congress's commerce powers.

## II.       Section 231(a)(3) Violates the First Amendment.

Section 231(a)(3) violates the First Amendment protection of speech and expressive conduct. The First Amendment protects a variety to expressive conduct, such as flag-burning. *See Virginia v. Black*, 538 U.S. 343 (2003); *Texas v. Johnson*, 491 U.S. 397 (1989); *Clark v. Cmty. for Creative Non- Violence*, 468 U.S. 288, 293 (1984). It is well-known that conduct is expressive under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting Nunez v. Davis, 169 F.3d 1222, 1226 (9th Cir. 1999)). Criminal statutes that hinder constitutionally protected speech "must be scrutinized with particular care." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

Section 231(a)(3) is problematic because it penalizes "any act" which can include verbal and expressive conduct. *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement."). In addition, the use of the phrase "any act… [that] interfere[s] with…" further encompasses as broad range of expressive acts and speech. For example, an individual watching and yelling at the police as they are arresting another individual could be charged with violating section 231(a)(3), which would violate that individual's constitutional rights. *Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that

annoy or offend them.").  It is further problematic that the statute does not requires that the defendant incited the "civil disorder" or engaged in "acts of violence."

### III.    Section 231(a)(3) is Unconstitutionally Vague.

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 595 (2016) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  The Due Process Clause requires that a statute (1) provide sufficient notice that would enable ordinary people to understand what conduct it prohibits; and (2) not encourage arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *United States v. Coutchavlis*, 260 F.3d 1149, 1155 (9th Cir. 2001).

Section 231(a)(3) contains ambiguous terms subject to several interpretations and fails to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited:

- **"any act"** can include pure speech, expressive conduct, minimal jostling, and grievous assaults;

- **"to obstruct, impede, or interfere"** leaves uncertainty as to whether it defines a culpable mens rea or a required result and, additionally, offers no objective limit requiring, for example, *forcible* interference or assault, *cf.* 18 U.S.C. § 111(a);

- **"incident to and during the commission of a civil disorder"** leaves the degree of connection with a "civil disorder" unclear and fails to state whether the defendant must have participated in the civil disorder;

- **"in any way obstructs, delays, or adversely affects commerce"** provides no limiting concept for what it means to obstruct, delay, or adversely affect commerce.

The definition of "civil disorder" in § 232(1) contains no limitation to solve the vagueness problem because it could apply to any boisterous public gathering to which police might be called, not just large-scale disturbances.

## **<u>CONCLUSION</u>**

For the foregoing reasons, and for any other reasons set forth in additional pleadings or at a hearing on this motion, and that this Court may deem just and proper, the Court should grant this motion and dismiss Count 1.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
UBONG E. AKPAN
Assistant Federal Public Defender
625 Indiana Ave., N.W.
Washington, D.C.  20004
(202) 208-7500