UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SAMUEL CAMARGO,<br><br>Defendants. | Case No.: 1:21-CR-70-ABJ |

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS COUNT ONE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant's Motion to Dismiss Count One (ECF No. 74). The Court should deny the defendant's motion to dismiss because Count One of the Indictment does not violate the Commerce Clause or the First Amendment of the U.S. Constitution and Count One is not unconstitutionally vague.

FACTUAL BACKGROUND

I.      The Defendants' Actions on January 6, 2021

The government relies on the statement of facts to set out the factual background relating to Camargo's actions on January 6, 2021. *See* ECF No. 1. In summary, Camargo attended multiple rallies and joined rioters on the west side of the U.S. Capitol grounds. While Camargo was on restricted grounds, he attempted to gain entry to the U.S. Capitol building through the North Door. While holding his mobile phone to videotape his actions, Camargo struggled with U.S. Capitol Police to open the North Door that led to the North Appointment Desk of the U.S. Capitol building. Multiple U.S. Capitol Police officers were guarding the interior of the North door and stopped Camargo from entering the building. Camargo also proceeded to post a picture of his hand holding a metal piece of an unknown structure from the U.S. Capitol building or grounds with the

admission that he "got some memorabilia, did it myself." After the first indictment was filed, the government also found evidence of Camargo spitting on officers on the Upper West Terrace of the U.S. Capitol.[1]

As a result of his actions on January 6, 2021, the Indictment charges the defendant with the following:

Count 1:   Civil Disorder, in violation of 18 U.S.C. § 231(a)(3)

Count 2:   Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1)

Count 3:   Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2)

Count 4:   Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D)

## **LEGAL STANDARD**

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a

---

[1] This evidence was disclosed to all parties and the government plans on filing a superseding indictment before the trial date.

defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 26-28 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## **ARGUMENT**

The Defendant's motion to dismiss Count One of the Indictment, alleging a violation of 18 U.S.C. § 231(a)(3), lacks merit and should be denied because the because Congress's power under the Commerce Clause is not at issue, the statute is not vague nor does it violate the First Amendment.

### I.     18 U.S.C. § 231(a)(3) Does Not Violate the Commerce Clause

Camargo contends that "Section 231(a)(3) unconstitutionally surpasses Congress's authority." ECF No. 65 at 2. He relies principally on *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000), which held, respectively, that Congress exceeded its authority under the Commerce Clause by enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), and the Violence Against Woman Act of 1994, § 40302, 108 Stat.

4

1941-42, 42 U.S.C. § 13981(b). *Lopez*, 514 U.S. at 568; *Morrison*, 529 U.S. at 617. Motion at 44-49.

This claim fails. Regardless of whether § 231(a)(3) exceeds Congress's power under the Commerce Clause—and it does not, *see infra* at 9-11—for cases such as Camargo's involving criminal conduct committed wholly within the District of Columbia, that statute fits comfortably within Congress's power under Article I, Section 8, Clause 17. It states

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States….

U.S. Const. Art. I, § 8, Cl. 17.

Congress's power under Clause 17 "is plenary." *Palmore v. United States*, 411 U.S. 397 (1973). "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Id*. "Congress 'may exercise within the District all legislative powers that the legislature of a state might exercise within the State … so long as it does not contravene any provision of the constitution of the United States.'" *Id*. (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 5 (1899)). "Congress may legislate within the District for every proper purpose of government," and "[w]ithin the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments." *Neild v. D.C.*, 110 F.2d 246, 249 (D.C. Cir. 1940) (citing *Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838); *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427 1932); and *O'Donoghue v. United States*, 289 U.S. 516 (1933)). "[W]hen it legislates for the District, Congress … exercise[es] complete legislative control as

contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other. *Nield* 110 F.2d at 250-51. *See also Hyde v. S. Ry. Co.*, 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative power of Congress over the District of Columbia and the Territories [is] plenary, and [is] not depending upon the interstate-commerce clause").

By enacting § 231(a)(3), Congress relied on its Clause 17 power with respect to the District of Columbia. That statute prohibits "any act" that "obstruct[s], impede[s], or interfere[s] with any … law enforcement officer … engaged in [his]official duties incident to and during the commission of a civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 231(a)(3) (emphasis added). "Commerce," as used in § 231(a)(3), "means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*." 18 U.S.C. 18 U.S.C.A. § 232(2) (emphasis added).

Regardless of whether Congress had authority under the Commerce Clause to regulate such conduct in jurisdictions other than the District of Columbia, it did not and could not exceed its "plenary authority" to exercise "police power" within the District of Columbia unless that exercise violated some other provision of the Constitution. Camargo fails to identify any Constitutional provision that § 231(a)(3)'s enactment would or does violate. *See generally Darnell v. Markwood*, 220 F.2d 374, 375–77 (D.C. Cir. 1954) (reversing dismissal of complaint under the Sherman Act, 15 U.S.C. §§ 1, 2, and 3, alleging that defendants "restrain[ed] interstate trade and commerce, and trade and commerce in the District" of Columbia; although defendants' activities wholly within the District of Columbia "do not come within the control of the Commerce Clause, or, therefore,

6

within either Sections 1 or 2 of the Sherman Act, "Section 3 … is not dependent upon the Commerce Clause but rests upon the plenary legislative power of Congress within the District of Columbia").

In *Lopez* and *Morrison*, the Court stressed how Congress's Commerce Clause power was cabined by the retained authority of the states to regulate commerce wholly within their borders. "The Constitution requires a distinction between what is truly national and what is truly local." *Morrison*, 529 U.S. at 617-28 (citing *Lopez*, 514 U.S., at 568); *Lopez*, 514 U.S. at U.S. at 559 ("the proper test [for the scope of Congress's power under the Commerce Clause] requires an analysis of whether the regulated activity 'substantially affects' interstate commerce"); *id*. at 564 ("if we were to accept the Government's arguments [that the Gun Free Schools Zone Act did not exceed Congress's powers under the Commerce Clause], we are hard pressed to posit any activity by an individual that Congress is without power to regulate"). Although it is without power to regulate purely intrastate commercial matters, Congress has plenary authority to regulate wholly local matters within the District of Columbia.

Additionally, Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison*, 529 U.S. at 617. "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id*. at 616. By contrast "the power of Congress under Clause 17 permits it to legislate for the District in a manner with respect to subjects that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it under Art. I, § 8." *Palmore*, 411 U.S. at 397-98.

Because Clause 17, rather than Clause 3, provided Congress with plenary authority to prohibit conduct that had any effect whatsoever on commerce within the District of Columbia, all of Camargo's challenges to the commerce element of § 213(a)(3) are beside the point, because all are grounded upon limitations on Congress's power under Clause 3. *See* ECF47 at 45 ("Section 231(a)(3) does not substantially affect interstate commerce"); *id*. at 46 ("Section 231(a)(3) does not regulate economic activity"); *id*. at 47 ("The jurisdictional element of § 231(a)(3) does not limit its reach to activities that substantially affect interstate commerce"); *id*. at 49 ("Congress did not find that § 231(a)(3)'s activities substantially affect interstate commerce"); *id*. at 50 ("The relationship between § 231(a)(3)'s activities and any effect on interstate commerce is too attenuated").

Indeed, even for criminal statues with national application that do not single out commerce within the District for special protection, as § 232(2)(C) does with respect to § 231(a)(3), Commerce Clause challenges to prosecutions for crimes occurring wholly within the District must fail. *See United States v. Mahdi*, 598 F.3d 883, 896 (D.C. Cir. 2010) (rejecting claim that VICAR, 18 U.S.C. § 1959, "is facially unconstitutional as it violates the Commerce Clause"; "[I]t is impossible to see how a statute regulating conduct within the District of Columbia could exceed congressional authority under the Commerce Clause"). *See id*. ("Even if there were some doubt about § 1959's constitutionality outside the District of Columbia, 'we need not find the language of [§ 1959] constitutional in all its possible applications in order to uphold its facial constitutionality.'") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 104 (1971)); *accord United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006) ("Within the District, Congress did not need to rely on its Commerce Clause authority."). All the more reason why this Court should reject

Camargo's challenge to the commerce predicate in the § 231(a)(3) count, where Congress expressly targeted domestic disorders that affected commerce within the District.

Although this Court need not reach the issue, the two district courts that have addressed claims like Camargo's, based on *Lopez* and *Morrison*, have held that § 231(a)(3) *does not* exceed Congress's Commerce Clause authority, even when applied to conduct outside the District of Columbia. *United States v. Wood*, 2021 WL 3048448, at *4–6 (D. Del. July 20, 2021); *United States v. Pugh*, 1:20-cr-00073-TFM-B, ECF95 at 7-11 (S.D. Ala., May 13, 2021); *see generally United States v. Huff*, 630 F. App'x 471, 484-85 (6th Cir. 2015) (unpublished) (rejecting Commerce Clause challenge to a charge of transporting a firearm in furtherance of a civil disorder, in violation of 18 U.S.C. § 231(a)(2)).

In both *Lopez* and *Morrison*, the challenged statutes contained no "jurisdictional element" that required the Government to prove that the offense conduct affected interstate commerce. *Lopez*, 514 U.S. at 561-62 (Gun Free Schools Zone Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," in contrast to former 18 U.S.C. § 1202(a), "which made it a crime for a felon to 'receiv[e], posses[s], or transpor[t] in commerce or affecting commerce ... any firearm'"); *Morrison*, 529 U.S. at 613 (Violence Against Women Act, "[l]ike the Gun–Free School Zones Act at issue in *Lopez*, … contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"; "Congress elected to cast § 13981's remedy over a wider, and more purely intrastate, body of violent crime").

Unlike those statutes, § 231(a)(3) has an "explicit jurisdictional element" that requires the Government to prove that the offense conduct interfered with interstate commerce. *Wood*, 2021 WL 3048448, at *4-6 (rejecting defense claim, based on *Morrison* and *Lopez*, that "§ 231(a)(3)

9

unconstitutionally exceeds Congress's authority and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce"; "courts have held that 'despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element'") (quoting *Pugh*, 1:20-cr-00073-TFM-B, ECF95 at *9 and citing *United States v. Kukafka*, 478 F.3d 531 (3d Cir. 2007) (upholding "Deadbeat Parents Act" where the statute contains an explicit jurisdictional element limiting its reach to only interstate activity). Additionally, at least one judge assessed this claim with a January 6 defendant and rejected it. *See United States v. Mostofsky*, 579 F. Supp. 3d (D.D.C. 2021).

For that reason as well, this Court should reject Camargo's challenge to the commerce predicate in § 231(a)(3), as charged in Count One of the Indictment.

## II. 18 U.S.C. § 231(a)(3) Does Not Criminalize Protected Speech Under the First Amendment.

Camargo's motion to dismiss should also be denied because Section 231(a)(3) is not overbroad under the First Amendment. Camargo argues that Section 231(a)(3) "penalizes "any act" which can include verbal and expressive conduct. ECF No. 65 at 4. Camargo does not address the differences between "as applied" and facial First Amendment challenges.[2] Regardless, as every other judge in this district who has addressed this claim has held, this claim fails. A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional,

---

[2] One raising a facial challenge must establish "that no set of circumstances exists under which [the challenged statute] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010). The person challenging the statute need not show injury to himself. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). On the other hand, to prevail on an as-applied First Amendment challenge, the person challenging the statute must show that the regulations are unconstitutional as applied to their particular speech activity. *See Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984); *accord, Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014).

10

'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)); *see also Williams*, 553 U.S. at 293; *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). A facial overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as § 231(a)(3) assuredly does. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct").

This Court recently rejected overbreadth challenges to § 231(a)(3). Rejecting an overbreadth challenge in *United States v. Williams*, this Court noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not*." United States v. Williams*, 2022 WL 2237301 at *6 (D.D.C. June 22, 2022).[3] Judge Berman Jackson "agree[d] with the reasoning in those decisions." *Id*. "First, the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id*. (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally

---

[3] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; and *Gossjankowski*, 2022 WL 782413, at *3. Judge Berman Jackson also cited three out of district cases that reached the same result. 2022 WL 2237301, at *6, citing *United States v. Howard*, 21-cr-28 (PP), 2021 WL 3856290, at *11-12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067-68 (D. Or. 2021); and *United States v. Wood*, 20-cr-56 (MN), 2021 WL 3048448, at *7-8 (D. Del. July 20, 2021).

11

protected activity." *Id*. "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id*. (citing *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

Other judges of this district are in accord. *See Mostofsky*, 579 F. Supp. 3d at 22-24 (rejecting overbreadth challenge to § 231(a)(3) and observing that Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech"); *Nordean*, 579 F. Supp. 3d at 56-58 (§ 231(a)(3) is neither vague nor overbroad); *McHugh*, 583 F. Supp. 3d at 24-29 (same); *United States v. Grider*, 617 F. Supp. 3d 42 (same).

Camargo has given this Court no reason to depart from the unanimous holdings of other judges in this district and elsewhere; Section 231(a)(3) is neither vague nor unconstitutionally overbroad.

### III.   18 U.S.C. § 231(a)(3) is Not Unconstitutionally Vague.

Finally, the defendant claims that Count One of the Indictment is vague. *See* ECF 65 at 1-2. But Count One of the Indictment provides fair notice to Mr. Camargo of the conduct it punishes and is therefore not unconstitutionally vague.

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonably opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular

circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

A number of judges in this district, in this context, have rejected similar challenges to Section 231(a)(3). *See e.g.*, *Nordean*, 579 F. Supp. 3d at 57-58; *United States v. Bingert*, 605 F. Supp. 3d 111, 128-130 (D.D.C. 2022); *McHugh*, 583 F. Supp. 3d at 26-28; *United States v. Fisher*, No. 21-CR-234 (CJN), 2022 WL 782413, at *2-3 (D.D.C. Mar. 15, 2022); *United States v. Williams*, No. 21-CR-618 (ABJ), 2022 WL 2237301, at *4-5 (D.D.C. June 22, 2022).[4]

As those courts recognized, Section 231(a)(3) is not unconstitutionally vague. It provides sufficient notice of the conduct it prohibits. The terms with which Camargo takes issue – "any act to obstruct, impede, or interfere" and "incident to and during the commission of a civil disorder" – do not carry the potential for misunderstanding or make the statute "so standardless that it invites

---

[4] Several courts outside this circuit have also rejected similar challenges to Section 231(a)(3). *See e.g.*, *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069-70 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-CR-104 (NEV/TNL), 2021 WL 1341632, at *16-20 (D. Minn. Jan. 6, 2021); *United States v. Wood*, No. 20-CR-56 (MN), 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-CR-28 (PP), 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

arbitrary enforcement." *Johnson*, 5576 U.S. at 595; *see also Nordean*, 579 F. Supp. 3d at 57 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge denied by Judge Bates, Camargo's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation – the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh*, 583 F. Supp. 3d at 27.

Camargo also claims that the phrase "incident to and during the commission of a civil disorder" is vague because fails to state whether the defendant must have participated in the civil disorder. ECF No 65 at 5. This argument is also meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a)(3)." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971); *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Camargo's argument that any "boisterous public gathering" could qualify (ECF No. 65 at 5), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 231(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge

14

to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See also McHugh*, 583 F. Supp. 3d at 26, n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply – unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Camargo's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean*, 579 F. Supp. 3d at 57 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to Section 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was clearly a "civil disorder," not just some "boisterous public gathering" to which the police were called. There is no question that Camargo participated in the disorder through his actions at the North Door of the U.S. Capitol building and on its grounds. Tracking the statutory language, the superseding indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." Camargo crossed into the restricted area, and physically struggled with U.S. Capitol Police to open the door to the U.S. Capitol building. While he was on the Upper West

15

Terrace, he saw a line of Metropolitan Police Department officers protecting the Capitol from being breached, and Camargo spit on them. Camargo was not a bystander, he was an active participant in a civil disorder. The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

Camargo's argument that Section 231(a)(3) is vague because it lacks an express scienter requirement or *mens rea* is also wrong. The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a law enforcement officer, *i.e.*, the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement).

The defendant failed to cite any judge addressing this exact motion, including before this very Court. This Court reached the same result in *United States v. Riley Williams*, 21-cr-0618, 2022 WL 2237301, at *6-7 (D.D.C. June 22, 2022). This Court noted that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at *7 (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)). This Court also concluded that § 231(a)(3) "only criminalizes acts performed 'to obstruct, impede, or interfere with' a law enforcement officer," "in other words, the statute requires obstructive intent." *Id. See also Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("It is true that section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers."); *Mechanic*, 454 F.2d at 854 (agreeing with *Foran* "that § 231(a)(3) must be construed to require intent").

And even if the statute lacked an express scienter requirement, courts, "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Camargo's motion to dismiss Count One be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Nialah S. Ferrer

NIALAH S. FERRER
Assistant United States Attorney
New York Bar No. 5748462
United States Attorney's Office
District of Columbia
(202) 557-1490
nialah.ferrer@usdoj.gov

*/s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
IL Bar No. 6316768
(202) 252-6778
Kaitlin.klamann@usdoj.gov

17