UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> SAMUEL CAMARGO, ) <br> ) <br> Defendant. ) | Crim. Action No. 21-0070 (ABJ) |

**ORDER**

Defendant Samuel Camargo has been charged in a four-count indictment with the following offenses:

> Count I – Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);
>
> Count II – Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);
>
> Count III – Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);
>
> Count IV – Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);

Indictment [Dkt. # 7]. Camargo has filed motions to dismiss Count I, Count II, and Count III. Mot. to Dismiss Count One [Dkt. # 65] ("Count I Mot."); Mot. to Dismiss Counts Two and Three [Dkt. # 67] ("Counts II and III Mot."). The government opposed the motions, Resp. in Opp. to Counts II and III Mot. [Dkt. # 70] ("Counts II and III Opp."); Gov't's Resp. in Opp. to Count I Mot. [Dkt. # 71] ("Count I Opp."), and defendant did not file any replies.

For the reasons set forth below, the motions will be **DENIED**.

## LEGAL STANDARD

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1882).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges. *See United States v. Eshetu*, 863 F.3d 946, 952–3 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury.'" *Id.* at 148, quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

# ANALYSIS

## I. Count I: Violation of 18 U.S.C. § 231(a)(3)

Camargo moves to dismiss Count I, civil disorder in violation of 18 U.S.C. § 231(a)(3), on three grounds: "(1) Section 231(a)(3) exceeds the Commerce Clause by addressing purely intrastate exchanges between individuals and local law enforcement; (2) Section 231(a)(3) violates the First Amendment; and (3) Section 231(a) is unconstitutionally vague in violation of the Due Process Clause for using ambiguous terms thereby providing inadequate notice of prohibited conduct." Count I Mot. at 1. The motion does not state whether he seeks to challenge the provision on its face or as applied to his conduct.

Section 231(a)(3) states:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function--Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).

### A. Commerce Clause

Congress may "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. There are "three broad categories of activity that Congress may regulate":

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those

> activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

*United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (internal citations omitted); *see Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 180 (D.C. Cir. 2015), citing *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012) ("'[T]he power of Congress over interstate commerce is not confined to the regulation of commerce among the states,' but extends to activities that 'have a substantial effect on interstate commerce.'"). According to the Supreme Court, if a statute contains a "jurisdictional element," this helps to "ensure, through case-by-case inquiry, that the [statute] in question affects interstate commerce." *Lopez*, 514 U.S. at 561; *see United States v. Morrison*, 529 U.S. 598, 613 (2000) ("[A] jurisdictional element would lend support to the argument that [the statute] is sufficiently tied to interstate commerce . . . .").

The term "commerce" is defined in section 18 as "commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia." 18 U.S.C. § 232(2).

Camargo argues that 18 U.S.C. § 231(a)(3) "unconstitutionally surpasses Congress's authority and interferes with the States' key role in general law enforcement because it largely applies to local conduct and requires only an attenuated connection to interstate commerce." Count I Mot. at 2. He also maintains that "the act of interfering with the duties of a law enforcement officer incident to a civil disorder is not economic in nature." *Id.* at 3.

In another January 6th case in this district involving a defendant charged with violating 18 U.S.C. § 231(a)(3), the court rejected similar arguments as to why the charge should be

dismissed.  *See* Second Mot. to Dismiss, *United States v. Mostofsky*, Case No. 21-cr-138 (JEB) (D.D.C. Aug. 31, 2021) [Dkt. # 47] at 43–58; *United States v. Mostofsky*, 579 F. Supp. 3d 9 (D.D.C. 2021).  It reasoned that section 231(a)(3) contains a jurisdictional element, since "it requires that the 'civil disorder' during which the act 'to obstruct, impede, or interfere with' a law-enforcement officer performing his duties occurs must be one that 'in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce.'"  *Id.* at 17 (citing district court cases in agreement).  It explained that "satisfying this prong is typically enough to satisfy the Commerce Clause," *id.* at 16, and it also went on to reject the defendant's arguments that the provision contains only an indirect connection to interstate commerce and in fact regulates criminal activity.  *See id.* at 17–20.

Regarding whether the provision was faulty because it requires only an attenuated connection to interstate commerce, the *Mostofsky* court reasoned: "when a person deliberately commits some act to obstruct, impede or interfere with those officers who are attempting to quell an interference with interstate commerce, that person <u>is</u> impacting interstate commerce."  *Id.* at 18, quoting *United States v. Howard*, Case. No. 21-cr-28-pp, 2021 WL 3856290, at *10 (E.D. Wis. Aug. 30, 2021) (emphasis in original) (internal alterations omitted).  Further, it explained that "[t]he 'substantiality' requirement does not apply in the context of determining what quantum of evidence is required to satisfy statutory interstate commerce jurisdictional elements, . . . and a statute may be upheld when it contains an element that requires that the conduct criminalized must affect or attempt to affect commerce <u>in some way or degree</u>."  *Id.* at 19, quoting *United States v. Harrington*, 108 F.3d 1460, 1465 (D.C. Cir 1997), and *Taylor v. United States*, 579 U.S. 301, 308 (2016) (emphasis in original) (internal quotation marks and citation omitted).  And as for whether

the statute impermissibly regulates non-commercial activity, the court reasoned that "it is often the case that the circumstances <u>around</u> an act are what must affect interstate commerce even though the <u>act</u> itself is not commercial." *Id.* at 20 (emphasis in original).

The Court finds the opinion in *Mostofsky* to be persuasive, and for those reasons, it will deny Camargo's motion to dismiss the civil disorder count on the grounds that section 231(a)(3) is constitutionally problematic under the Commerce Clause.[1]

### B.   First Amendment – Overbreadth

Camargo next argues that "[s]ection 231(a)(3) violates the First Amendment protection of speech and expressive conduct" "because it penalizes 'any act' which can include verbal and expressive conduct," and because "the use of the phrase 'any act . . . that interferes with . . .' further encompasses [a] broad range of expressive acts and speech." Count I Mot. at 4 (internal alterations omitted). Further, he continues, it is problematic that the provision "does not require[] that the defendant incited the 'civil disorder' or engaged in 'acts of violence.'" *Id.* at 5.

To succeed on a facial challenge, the defendant must establish "that no set of circumstances exists under which [the challenged law] would be valid or that the statute lacks any plainly legitimate sweep." *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014), quoting

---

1   Other courts in the district have found that Congress also had the power to regulate civil disorders within the District of Columbia under Article I, Section 8, Clause 17 of the Constitution, *see United States v. Grider*, 617 F. Supp. 3d 42, 49 (D.D.C. 2022); *see also Mostofsky*, 579 F. Supp. 3d at 21, but the Court does not need to reach that question given its decision under the Commerce Clause.

*United States v. Stevens*, 559 U.S. 460, 472 (2010).[2]  "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."  *United States v. Williams*, 553 U.S. 285, 293 (2008).  The second step requires the court to evaluate "whether the statute . . . criminalizes a substantial amount of protected expressive activity."  *Id.* at 297.  "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech . . . ."  *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

This Court has already found that section 231(a)(3) is not overbroad on its face.  *See United States v. Williams*, Crim. Action No. CR 21-0618 (ABJ), 2022 WL 2237301, at *6 (D.D.C. June 22, 2022).  It observed:

> First, the statute plainly covers conduct, not speech, as it criminalizes "any *act* to obstruct, impede, or interfere with" a law enforcement officer engaged in the performance of official duties, and the terms "obstruct, impede, or interfere with" are all plainly understood and must be supported by the facts in any particular case.  Although some "acts" could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity.  Since section 231(a)(3) does not "make unlawful a substantial amount of constitutionally protected conduct," it is not overbroad on its face.  *City of Houston v. Hill*, 482 U.S. 451, 459 (1987).

---

2     "Conversely, to prevail on an as-applied First Amendment challenge, [the defendant] must show that the [challenged law is] unconstitutional as applied to [his] particular speech activity." *Edwards*, 755 F.3d at 1001, citing *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802–03 (1984).  Camargo does not argue that the law is unconstitutional as applied to his First Amendment activity, and so the Court will analyze whether section 231(a)(3) is overbroad on its face.

*Id.* (emphasis in original). Furthermore, there was no legal support offered for the proposition that the statutory provision is problematic because it does not require a defendant to have incited the "civil disorder" or engaged in "acts of violence." *See* Count I Mot. at 5. This is not a persuasive reason to invalidate the law on its face, as Congress may choose to prohibit particular acts – "obstruct[ing], imped[ing], or interfer[ing]" – at a particular time, such as "during the commission of a civil disorder." 18 U.S.C. § 231(a)(3).

For these reasons, Count I will not be dismissed on the grounds that the statute is overbroad.

### C. Vagueness

Finally, Camargo argues that Count I should be dismissed because 18 U.S.C. § 231(a)(3) is unconstitutionally vague. *See* Count I Mot. at 5. He argues that the provision contains "ambiguous terms subject to several interpretations and fails to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.* He points to the phrases "any act;" "to obstruct, impede, or interfere;" "incident to and during the commission of a civil disorder;" and "in any way obstructs, delays, or adversely affects commerce" as vague. *Id.* He also says that "[t]he definition of 'civil disorder' in § 232(1) contains no limitation to solve the vagueness problem because it could apply to any boisterous public gathering to which police might be called, not just large-scale disturbances." *Id.*

A law can be unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

With respect to fair notice, "a statutory term is not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017), quoting *Roth v. United States*, 354 U.S. 476, 491 (1957) (alternations in original). "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'" *Id.*, quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (alterations in original). "Accordingly, when the vagueness doctrine assesses a legal term's meaning to ordinary people, it is assessing meaning with the elementary rule of statutory interpretation: [w]ords receive their plain, obvious and common sense meaning, unless context furnishes some ground to control, qualify, or enlarge it." *Id.* at 1108 (internal quotation marks and citation omitted).

As to the second aspect of the vagueness doctrine, the Supreme Court has explained that if the applicability of a statute depends upon "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings," courts may find the statute to be unconstitutionally vague on the grounds that it encourages arbitrary and discriminatory enforcement. *Williams*, 553 U.S. at 306.

Defendant appears to object to the statute on both grounds. *See* Count I Mot. at 5 (the provision "fails to provide a person of ordinary intelligence a reasonable opportunity to know what

is prohibited" and "could apply to any boisterous public gathering to which police might be called").[3]

The statute prohibits "any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays or adversely affects commerce . . . or the conduct or performance of any federally protected function." 18 U.S.C. § 231(a)(3). The Court has previously noted that examining the words of the provision *in context* considerably narrows the occasions when it could be applied. *See Williams*, 2022 WL 2237301, at *4.

> "Challenged terms must be read in context of the regulation as a whole." *Bronstein*, 849 F.3d at 1109, quoting *Griffin v. Sec'y of Veterans Affs.*, 288 F.3d 1309, 1330 (Fed. Cir. 2002). As other courts in this district have recently held, "[a]n ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." [*United States v.*] *McHugh*, [Case No. 21-cr-453 (JDB),] 2022 WL 296304, at *16 [(D.D.C. Feb. 1, 2022)]. Further, "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is

---

3     Defendant appears to conflate the overbreadth and vagueness doctrines. While the "overbreadth and vagueness doctrines are related," they are "distinct": "[a] vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity." *Hastings v. Jud. Conf. of the U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987).

For example, defendant takes issue with the term "any act" as vague because it "can include pure speech, expressive conduct, minimal jostling, and grievous assaults." Count I Mot. at 5. The Court has already found – in evaluating overbreadth – that while some "acts" could also serve an expressive function, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity. To the extent that defendant's argument is that "any act" renders the entire provision unconstitutionally vague by failing to give ordinary people fair notice of the conduct it punishes, the Court will go on to address this argument as well.

> performing his official duties 'incident to and during' a civil disorder." [*United States v.*] *Nordean*, [Case No. 21-cr-175 (TJK),] 2021 WL 6134595, at *16 [(D.D.C. Dec. 28, 2021)].

*Id.* And as for whether the statute is drafted in a manner that necessarily vests the determination of whether the law has been violated upon a purely subjective judgment, the Court said:

> [T]hat concern is not present in this case, because a violation of 18 U.S.C. § 231(a)(3) does not depend upon an element that can vary with the eye of the beholder, such as "with no apparent purpose." [*City of Chicago v.*] *Morales*, 527 U.S. [41,] 47 [1999]. Here, the applicability of the statute turns on whether an individual is in fact obstructing, impeding, or interfering with a law enforcement officer who is performing official duties at a specific time: during the commission of a civil disorder. And while the statute does not specifically define the words "obstruct," "impede," or "interfere," the statutory terms are not subject to "wholly subjective judgments," *Williams*, 553 U.S. at 306; *see Morales*, 527 U.S. at 62, and therefore, the statute does not on its face authorize or encourage discriminatory enforcement.

*Id.* at *5.

Further, the Court rejected the argument that the term "civil disorder" has no limitation to solve the vagueness problem because it could apply to any "boisterous" – or as that defendant put it, "tumultuous" – public gathering.

> [D]efendant's hyperbole is unwarranted; the term "civil disorder" is defined in the statute to be "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). This series of requirements belies defendant's suggestion that the term is devoid of limiting principles to guide its application; the event at issue must involve a group of three or more persons, acts of violence, *and* actual, or an immediate danger of, property damage or personal injury. *See McHugh*, 2022 WL 296304, at *15.

*Id.* (emphasis in original).

Defendant's argument that the phrase "'in any way obstructs, delays, or adversely affects commerce' provides no limiting concept for what it means to obstruct, delay, or adversely affect

commerce," Count I Mot. at 5, goes to the sufficiency of the jurisdictional element in the statute. Setting that aside, defendant continues to lift the words out of context. The statute's reach is limited by the rest of the language. The charged conduct must have occurred during *a civil disorder* that in turn, "obstructs, delays, or adversely affects commerce." And there are specific fact-based ways to determine whether a civil disorder has obstructed, delayed or adversely affected commerce. The government will be required to prove that element in its case-in-chief, but the count itself is not deficient because the proof will be necessary.

Since Congress did not exceed its authority in enacting section 231(a)(3), which is neither vague nor overbroad, the Court will **DENY** Camargo's motion to dismiss Count I.

## II.     Counts II and III: Violations of § 1752(a)(1) and (a)(2)

Camargo also filed a motion to dismiss Count II, which charges him with entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), and Count Three, which charges him with disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2). *See* Counts II and III Mot.

Section 1752(a) states:

> Whoever-- (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so; [or] (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions . . . . or attempts or conspires to do so, shall be punished . . . .

18 U.S.C. § 1752(a). The phrase "restricted building or grounds" is defined in the statute:

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>
> > (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
> >
> > (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
> >
> > (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance . . . .

18 U.S.C. § 1752(c).

Defendant maintains that these counts should be dismissed because first, they "do not, and cannot, allege the 'restricted building or grounds' element of § 1752(a)," and second, "§ 1752(a) is unconstitutionally vague and overbroad." Counts II and III Mot. at 1.

As to defendant's first argument, the Court has ruled in prior opinions that the definition of "restricted building or grounds" encompasses Vice President Pence's presence at the Capitol on January 6, 2021. *See Williams*, 2022 WL 2237301, at *19–*20; *United States v. Rodriguez*, Crim. Action No. CR 21-0246 (ABJ), 2022 WL 3910580, at *16–*18 (D.D.C. Aug. 31, 2022). It has rejected some of the same arguments that Camargo now advances: that the Vice President could not have been "visiting" the Capitol because of his role as President of the Senate, *see* Counts II and III Mot. at 2–4; and that the plain meaning of "temporarily visiting" does not encompass the Vice President's actions on January 6, *id.* at 6–11. The Court said:

> The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson* [*v. Shell Oil Co.*], 519 U.S. [337,] 340 [(1997)]. While this determination "does not turn solely on dictionary definitions of its component words," *Yates* [*v. United States*], 574 U.S. [528,] 537 [(2015)], "dictionary definitions . . . bear consideration."

13

*Id.* at 538. The Oxford English Dictionary defines "temporarily" as "[f]or a time (only); during a limited time." *Temporarily*, Oxford English Dictionary (2d ed. 1989); *see also Temporarily*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/temporarily ("during a limited time"). It defines "visit" as "a short or temporary stay at a place." *Visit*, Oxford English Dictionary (2d ed. 1989) (definition "d."); *see also Visit*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/visit ("to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)"). Taken together then, as was plain even before the dictionary was consulted, the phrase "temporarily visiting" means being somewhere for a limited period of time, and there is no linguistic reason why the phrase could not include being there for a business purpose.

This definition obviously encompasses Vice President Pence's actions on January 6, 2021. He went to the Capitol with a discrete purpose: to certify the Electoral College votes, a process that by law is contemplated to take one day. *See* 3 U.S.C. § 15 ("Congress shall be in session *on the sixth day of January* succeeding every meeting of the electors. The Senate and House of Representatives shall meet . . . at the hour of 1 o'clock in the afternoon on that day, and the President of the Senate shall be their presiding officer.") (emphasis added). He remained in the Capitol until after the certification process concluded. *See* Kyle Cheney, *Capitol Police: Pence Remained on Capitol Grounds Throughout Jan. 6 Attack*, Politico (Feb. 4, 2022), https://www.politico.com/news/2022/02/04/jan-6-pence-remained-on-capitol-grounds-00005919.

. . . .

A restricted building is defined to be, first, the White House or the Vice President's residence, and second, any place where those subject to Secret Service protection may be temporarily visiting. *See* 18 U.S.C. § 1752(c)(1)(A)–(B). This structure reflects that it is the White House and the Vice President's residence where the President and Vice President live and maintain their primary working offices, see *McHugh*, 2022 WL 296304, at *22, citing *The Vice President's Residence & Office*, The White House, https://www.whitehouse.gov/about-the-white-house/the-grounds/the-vice-presidents-residence-office/ ("[T]he Vice President's working office is in the West Wing of the White House."), but also that their duties may take them to multiple other locations within the District of Columbia and around the world where it is equally essential that they be protected. *See McHugh*, 2022 WL 296304, at *21. While the Vice President serves as President of the Senate, this is not the Vice President's daily responsibility, *see The President of the Senate's Role in the Legislative Process*, United States

14

> Senate, https://www.senate.gov/general/Features/Part_1_VP.htm ("The vice president presides over the Senate only on ceremonial occasions or when a tie-breaking vote may be needed."); indeed, on other occasions, the Senate designates one of its own members to preside. *See The Executive Branch*, The White House, https://www.whitehouse.gov/about-the-white-house/our-government/the-executive-branch/. The mere fact that the Vice President has a "ceremonial" office available when called upon to conduct business within the Capitol building, see Capitol Building and Grounds, Congressional Directory 573 (1999), https://www.govinfo.gov/content/pkg/CDIR-1999-06-15/pdf/CDIR-1999-06-15-CAPITOL.pdf, does not make the stay on the Capitol grounds any less temporary, and the fact that the Vice President has constitutional duties to perform there is not inconsistent with the ordinary understanding of a "visit." See [*United States v.* ] *Andries*, [Case No. 21-cr-93], 2022 WL 768684, at *16 [(D.D.C. Mar. 14, 2022)] ("[T]here are situations in which it would be quite natural to say that a person "temporarily visits" a place where she has an office: consider a CEO of an international corporation who normally works from headquarters in New York, but who maintains an office for her occasional use at the firm's satellite location in London."). Defendant's reading of the statute would result in a large, entirely illogical gap in its coverage, and it is not supported by the text or by the application of common sense.

*Williams*, 2022 WL 2237301, at *20.

Defendant's one-paragraph argument that the entire U.S. Capitol could not constitute "restricted buildings or grounds" under section 1752 because the building "may not be declared off limits to the people" defies common sense. Counts II and III Mot. at 4. First of all, the restrictions on January 6, 2021 were not permanent and were not designed to restrict specific First

Amendment activity: they were in place before the mob ever got there.[4]  The restrictions were designed "to keep the crowd away from the Capitol building and the proceedings underway inside," Gov't's Mem. in Support of Pretrial Detention [Dkt. # 3] at 3, and the grounds had to be secure in light of the Vice President's participation in those proceedings.  Section 1752 is not about broadly or absolutely restricting lawful demonstrations in and around the Capitol; rather, it is focused on prohibiting individuals from entering or remaining, or engaging in disorderly or disruptive conduct in "any posted, cordoned off, or otherwise restricted area . . . where the President or other person protected by the Secret Service *is or will be temporarily visiting*."  18 U.S.C. § 1752(c) (emphasis added).

Camargo also argues that the Capitol on January 6th was not "restricted grounds" because the Secret Service "did not designate, post, cordon-off, or otherwise restrict the entire Capitol Building and its entire grounds in relation to the Vice President's presence there for the electoral vote count on January 6, 2021," but only restricted "the area within a few feet of Vice President Pence at any given time."  Counts II and III Mot. at 5.  He contends that the legislative history indicates that the purpose of the statute was to provide only the Secret Service the authority to designate buildings and grounds to be posted, cordoned off, or otherwise restricted, and this did not occur on the day in question.  *Id.*  The Court is not certain that this argument comports with

---

4    Thus, this case presents a different situation from *Wheelock v. United States*, 552 A.2d 503, 510 (D.C. 1988), in which the court found:

> Closing the [Capitol Rotunda] for security reasons arising from the presence of the demonstrators cannot serve to bootstrap the security concern into an independent factor justifying their arrest. . . .  [T]he security claim for closing the Rotunda was pretextual and the closing could not, in turn, serve as the basis for security concerns.

the evidence that may be introduced concerning fencing and signage on January 6, but it is not basing its ruling on that observation. And the statute contains no such requirement. It does not mandate that any particular entity or method be the one to restrict a building or grounds. *See Grider*, 617 F. Supp. 3d at 53 ("[N]othing in the statutory text requires the Secret Service to be the entity to restrict or cordon off a particular area, nor does [the defendant] point to any provision in the statute in support of such a proposition.") (internal quotation marks and citation omitted); *id.* at 53 n.9 (collecting cases). It also does not mandate the parameters or scope of any particular area that may be restricted. *Contra* Counts II and III Mot. at 9, citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (restrictions on airport hangar); *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (unpublished) (restrictions on park). And Camargo does not dispute that the Capitol was otherwise "restricted" to the public.

Camargo's last argument muddles the vagueness and overbreadth doctrines yet again. He contends:

> Section 1752(a)(2) contains vague and imprecise terms and phrases that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and invite[s] arbitrary law enforcement. "[I]mpede or disrupt the orderly conduct of Government business or official functions," which language appears twice in the statute, includes within its plain meaning acts such as pure speech, expressive conduct, and lobbying. And "within such proximity to any restricted building or grounds" provides no clear limit on where exactly the statute applies.

Counts II and III Mot. at 16.

As the Court has already found, and for the reasons explained above, "[t]he language in 18 U.S.C. § 1752(a)(1) and (2) is plain and unambiguous." *Williams*, 2022 WL 2237301, at *20. As for the question of whether the "impede or disrupt" language is impermissible, a consideration

of the plain text of the provision reveals that section 1752(a)(2) is directed toward conduct, and not speech. Moreover, the statute's reach is limited and does not "make unlawful a substantial amount of constitutionally protected conduct." *City of Houston*, 482 U.S. at 459. It contains an intent requirement, and only applies when individuals "knowingly" impede or disrupt "the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2); *see United States v. Rhine*, Criminal Action No. 21-0687 (RC), 2023 WL 372044, at *11 (D.D.C. Jan. 24, 2023). And the language "within such proximity, to any restricted building or grounds" appears in the same narrow context. 18 U.S.C. § 1752(a)(2). The Court agrees with another court in this district that "[t]he 'proximity to' language merely describes the outer bounds of where a violation may take place." *United States v. Puma*, 596 F. Supp. 3d 90, 113 n.6 (D.D.C. 2022).[5]

Because the Court finds that the term "restricted building or grounds" encompasses the United States Capitol, which the Vice President was "temporarily visiting" on January 6, 2021, and that the statute is not vague or overbroad, the Court will **DENY** defendant's motion to dismiss Counts II and III.

---

5   The Court finds it unnecessary to apply the rule of lenity as defendant urges, *see* Counts II and III Mot. at 12–13, as the language in sections 1752(a)(1) and (2) is unambiguous. *See Yates v. United States*, 574 U.S. 528, 547–48 (2015).

## CONCLUSION

For all of these reasons, defendant's motions to dismiss Count I [Dkt. # 65] and Counts II and III [Dkt. # 67] are **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: August 18, 2023